on behalf of Mary Wilkes Short as well as the the the surviving wives Erica Linnell, Sherri Lynn Linnell, Molly Tyson, and Ruth Trentedu, all who have lost their husbands as a result of a plane crash up in the mountains of Idaho. The case arises and is asking this court to determine liability under the Federal Torts Claims Act. The issue here is whether or not the government appropriately acted with respect to maintaining a runway, a rural runway, and and it's the United States Forest Service and it's their obligation to For the purposes of this appeal, we're focusing on the discretionary function exception under 28 U.S.C. Code Section 2680. It applies whether relevant government agencies fail to follow its own press policies here. The second issue that the court addressed below, which we think the court got wrong, is whether or not the Idaho Recreational Use Statute applies here and whether it prevents the United States government or the Forest Service from being sued by allowing airplanes to land at this runway up in the mountains. The issue here, and for the purpose of this argument, there are two prongs of the discretionary function test and we're going to focus on the first one. In the Supreme Court devised this two-pronged test to determine whether or not or whether or not there's applicability of discretionary function exception. And first, the court has to determine whether the act is discretionary in nature, which necessarily involves an element of judgment or choice. And here is where we think the court below got it wrong. The question, the second component is whether the discretion involved is of the kind that the discretionary function exception was designed to shield, namely only governmental actions, decisions of a policy, public policy nature. And it's our position that if there was any decisions involved. Now with respect to the first prong of the discretionary function exception, we submit that it cannot be used, the discretionary function exception cannot be used as an exception to a federal tort claims act here because the Forest Service specifically set forth in their made by the United States Forest Service was number one and in the record it's ER 207 where we outline the Forest Service policy and procedure manual where they specifically say as the airfield operations there are three controlling issues. One is, and this is section 77 35.21, number one you operate all airfields in the forest transportation system quote in accordance with applicable federal aviation administration regulations and state requirements. Number two, this is the important element, close airfields in the forest transportation system when a hazard to aircrafts exists unless the hazard is corrected immediately. So by adopting the FAA regulations we have to look whether or not this airport had a hazard or presumed hazard and once that is identified, once it's identified the United States Forest Service had two choices here. One, fix it under section 2 of 77 35.21 or shut the airport down. There was no other options here, there was no options to do a study, there was no options to to consider alternatives unlike if this was the FAA itself. Here the Forest Service adopted the second prong under part two that to either shut it or fix it and the problem here under the under the manuals are I'm sorry in terms of following the the the history of this airfield which is in a rural area when it was built in 1965 and I would direct the court to the record at page 225 and where it specifically says in the in the diagrams there is a dense fur thicket that may have to I'm sorry it has to come out if operation indicates that it is necessary. That's 1965, quite some time ago. So when they're designing the airport they identify a group of trees that are at the end of the runway right where every pilot is going to have to veer their aircraft as they take off. It's an unusual approach or take off where you take off the plane drops to the side and that's where the trees are and then you go up a valley to leave the mountains. In 1965 at record number page 222 since the takeoff pattern is to become airborne then slip to the side it is important that the trees be removed. This is a first group of trees which were already obstructing the glide path the takeoff glide path. It goes on to say that there are different additional coniferous trees that may have to be removed in the future and that's 65. Twice it's identified. What does the United States Forest Service do over the years? Nothing. They don't they don't remove the trees they don't shut the airport. Didn't they give people notice? I'm sorry didn't they give the pilots notice that the trees were there? No that's not an issue before the court notice. What's very interesting the notice goes the other way your honor. In 1995 now quite a bit of time goes by there is a plane crash where that where a plane strikes the very trees that were potentially a hazard which they were talking about. Plane hits those trees crashes and unfortunately unlike the short families and the Linnell families and the Trinidad families the pilots survived and said these are the trees I hit because they're in the glide slope. The NTSB identified those very trees and the United States Forest Service now they had under the FAA regulations and that's FAA regulation 14 CFR 7719 D2 and E under the regulation there is a presumed hazard and there is an actual known hazard identified by the NTSB. Once again the Forest Service does not exercise it's one of two choices that had to do. It had to either shut the airport or cut the trees. They did neither in 1995. Then what happens in 2011 again the Forest Service has a report this is this is in the record at the supplemental record at page 127 and we have a airport master record and I wish I had better vision but it basically says and it's almost identical what's said here as what was says in 1965 except here it says there are now numerous additional obstructions at both ends of the runways. Those are the very trees. There's no question in this record that the obstructions are the same or not the same trees that were seen in 65 that caused the crash in 1995. Specifically the fourth item down trees and high on both ends of the runway that's runway 22 and 4 requires a steep approach yeah and not even is it a generally speaking they're specifically identifying there's only it may be confusing there's runway 4 runway 22 both are the same depending upon if you're coming in from one direction or trees are there and and again this is a government report this is the United States Department of Transportation the the Forest Service was aware of this they had two choices again they had one more opportunity to stop this from happening this accident from happening in 2015 they could have shut the airport they could have cut the trees they did nothing they did neither so from our standpoint your honors the discretionary function finding of the court below was what was error it was error this is a case where and certainly there are policy decisions that could be considered upon any function of the State's Forest Service adopting a protocol a procedure a policy in their Forest Service manual at it's in the record at 207 where they said they had to do one of two things when there was a presumed hazard the presumed question we ask a question bond to the argument that the Forest Service manual isn't binding on the United States it doesn't have the force of law but your honor we have to look we have to look at what is the standard that the the Forest Service is running it is running these airports there is a special relationship between pilots and owners of land the United States government and the Forest Service through the Forest Service are running these airports making them available and whether or not it's it's absolutely binding on the US government this is the standard that they adopted on behalf of the government in order to in order to provide a safe environment for pilots landing and taking off here this is the guidance there is no third option that they could even consider here just sitting back and saying let's have another plane crash is not an purposes of what we're dealing with here and the discretionary function exception it should be binding on the federal government now the FSM or the Forest Service manual 77 35 21 is very clear you close airfields in the forest transportation system when a hazard to aircraft arises exists unless the hazard is corrected immediately there is absolutely no record in this there's no evidence in this record that the Forest Service either shut down the airport or remove the hazard immediately there is no ambiguity here if we're looking at the FAA regulations which under subdivision one was adopted by the United States Forest as being applicable to all the airfields in the Forest Service system we know that you define a presumed hazard these hazards are presumed once they've been identified to it so you remove it it's presumed hazard you may hear the government argue here that there was a an inspection done at some point which they are now after the fact saying they consider to be the basis for not believing this was a hazard was very interesting is that study that was done and the witness of mr. Bennett and I believe this is at page 174 of the record mr. Bennett who's being relied upon by the government saying that they took a third approach meaning they testified he didn't even know how to do a tree assessment did not do a tree assessment but what's very interesting is his own report which is also in the record identifies the tree as an obstruction within the obstructions and there is no argument anywhere in it really any significant argument that the trees themselves the ones that mr. shorts plane hit were within the glide slope within the FAA guidelines of glide slope and therefore an obstruction just quickly and I'm gonna and then I'll reserve whatever little time I have left with respect to the the Idaho recreational use statute we think the court got this flat wrong there is a special relationship between the owner of an airport and pilots and and and that is that is where the court just missed you know misapplied the law Thomas versus the city of Pocatello was clear and and there was never any amendment of the statute to change the fact that there is a special relationship here we'll rely on our briefs for the for the rest of this argument thank you so much right Thank you counsel mr. Sturgill good morning may it please the court I am Lowell Sturgill from the Department of Justice representing the United States we believe the district court correctly dismissed this case for two reasons one is the FTC a discretionary function exception bars the case and then second independently the Idaho's recreational use statute also bars the case beginning with discretionary function the district court correctly held that there was no specific mandatory duty for the Forest Service to remove the trees or close the airfield the plaintiffs are relying on this provision in the Forest Service manual 77 35 point 21 to which states that the Forest Service will close airfields when a hazard to aircraft exists unless the hazard is corrected immediately our position of what the district court agreed with is that the Forest Service manual critically doesn't define the term hazard as a result under this court's law that question is left to discretion of the Forest Service officials and that alone shows that there's no specific mandatory duty that this manual presents and the record actually does completely support this the humble declaration we've cited which is that pages 113 work 114 of these supplemental excerpts humble explains that the term hazard in this manual provision means a major event like a flood or a fire and that would not include this particular tree and we can talk about that more later which because more clearly spelled out in the US FS manual and if you were going to use the same your client was going to use the same term hazard as is using the FAA to govern airports why not explain that there's a different definition because I think your opposing counsel makes a very facially appealing argument and then you have to really go layers to explain why these things are not used in the same way in both so your honor I think it would be a different case if the manual itself said the term hazard for the purpose of this provision means the same thing as the FAA regulations just because the the the manual doesn't say that I think does not permit any kind of a presumption that it does mean the same thing the manual could have said for example well we accept all the definitions in the FAA regs it doesn't say that either so what you're left with is discretion and that's that's just the way it is and the district court made several points that I think support our reading of the manual first of all the court mentioned that another provision of the same section 77 35 point 21 3 requires the Forest Service to report any obstructed approaches for inclusion in the FAA airport manual so what the district court said was okay well under plaintiffs reading of section 2 of this regulation that section 3 would be basically meaningless because under plaintiff's view the there's no there's no need to report because the Forest Service has to close the airfield or remove the trees immediately the plaintiffs don't have any response to that whatsoever and then I think second of all the district court pointed out that these regulations have to be read in light of the context that's involved and here what we have is the context involves backcountry turf and dirt airports and it would defeat the United States or Forest Service policy in maintaining these kinds of airports and there I shouldn't say airports I'm sorry that airstrips in a primitive condition to require basically the plaintiffs required just to or advocate remove all trees in the area so again I contextual points support the district courts reading of the manual provision and the final point is the plaintiffs also rely on this section 21.3 of the manual and what that says is that the Forest Service will operate its backcountry airstrips and the key term is in accordance with the FAA regulations so our position is in accordance with doesn't mean that the manual again adopted or incorporated definitions in the FAA regs instead and the normal understanding of accordance with it means well the the Forest Service is going to operate these airstrips to comply with what are the FAA requires under its regulations but this is the third point the district court made and I think it's also telling is the right the applicable FAA regulations themselves don't require airport owners to do anything when they get one a report of one of these hazards it's up to the it's left within the discretion of the airport owner what to do what happens is the FAA can use this information to notify pilots but hey there are trees around here and that happened the FAA has been on notice of these trees in this area for a long time and there are a series of it's been noted on the FAA master records which are made available to pilots so that they're on notice when they fly into a an airstrip like this first of all the notice says this airstrip is for back experienced backcountry pilots only so if you're not experienced backcountry pilot you're on notice right there you shouldn't be flying into here but if that says they're steep there's steep approaches on both sides there are trees so you need to be careful so the Forest Service did what it was supposed to do and again I think the plaintiff's case fails right on the first prong of the discretionary function exception because there's no specific mandatory duty that they've identified moving to the second part of the Gower-Baird test even if the plaintiffs could show that there was a specific mandatory duty which they can't this question was susceptible to policy analysis what to do about this and the Morales case which is very recent from this court we think is controlling here in that case another agency in the US Geological Survey decided that it would rely on the FAA's judgment about safety concerns with hanging cables across rivers and so it it hung the cable at a level that the FAA regulations deemed appropriate and then a helicopter hit it and there was a crash and this court said well the the US Geological Survey's decision to rely on the FAA with respect to safety satisfies the second part of the discretionary function test and here of course it's undisputed in the record that the Forest Service relied on the Idaho Department of Transportation to inspect these airstrips and the Idaho it's also undisputed that the Idaho Department did inspect these airstrips every three years and the inspector specifically testified that he didn't think that this set of trees the plaintiffs are talking about was a hazard at all and the reason is and this is I would like to point the court to page 262 of the supplemental excerpts of record this is a picture of the relevant part of the airstrip and what the picture shows is exactly what all of the government's witnesses explained there are two safe ways to exit this airstrip one is just a straight-ahead route that that pilot shorts wife Mary testified that he he always took so that route doesn't put you over the trees that this that he hid in this particular instance and the second route is you can exit to the right before you get to the end of the airstrip and exit out over the creek and that he never used that way out but that's another safe way out so the record again is undisputed that there are two safe ways out of this airstrip you know there were 800 flights a year going out of this airstrip and the FAA never received any kind of a notification that any pilot ever had any problem exiting this airstrip and pilot short himself used the airstrip about ten times I believe it ten times a year over a series of years and never had a problem so you know this is just not a case where the FAA was on notice of any kind of a hazard with respect to this tree moving on we believe that independently the the district court correctly held that Ohio's recreational use statute also bars this case that statute was enacted to encourage owners of land to make their land available for recreational uses here it's undisputed that the Forest Service owned the airport didn't charge pilot short of fee and allowed recreational uses it's also showed in our briefs that this this airstrip is not eligible for federal funding so that exception to the I don't statute doesn't apply the plaintiffs say that as you've heard this morning that there's a special relationship under Idaho law between airport owners and pilots they rely on the Tomich case but Tomich is distinguishable for multiple reasons as explained in our brief in the district court's opinion first of all the Tomich case said that special relationship existed because of the existence of what the what the Idaho Supreme Court specifically termed extensive state and local regulations regulating that commercial airport which was authorized for use by air carriers commercial air carriers well here there are no applicable state or municipal regulations at all that regulate this backcountry airstrip and then second again commercial Tomich involved a commercial airport used by commercial air carriers and that is also not the case with respect to this backcountry airport it's not certified by the FAA for those kinds of purposes so just right on the face of Tomich the district court was right to find that there are two distinctions here and I just want to again emphasize what the nature of this backcountry airport was and how different it was from the municipal airport in Tomich as our brief explains this airport had minimal improvements what that means it had two windsocks it had rocks for runway markers and a fence that's it for improvements and it was maintained in a primitive state so all the all the Forest Service committed to do was mow the grass and basically try to keep weeds out so that again is a completely far cry from the municipal airport in finally the plaintiffs alleged that the recreational use statute is inapplicable here because it was willful and wanton for the Forest Service not to remove these trees so again that is that is contradicted by the record and by this court's cases I would point the court first of all to the Linford case was actually one of my cases a few years ago that case involved a plaintiff who was cattle guard in a recreational area and this court said that the recreational use statute well the district court held that the recreational use statute bar the case and that there was no willful or wanton conduct because there were numerous uses of the statute safe safely over over many years without any kind of a prior incident and that's the case here this court affirmed in Linford and I think that's sort of the end of that but again even beyond that we have we have inspections of this airstrip every three years by the Idaho Department Transportation its inspector doesn't view these trees as a hazard and he flies it he doesn't just inspect it doesn't drive up there he flies in and out every three years so he's he's really on on top of this there the FAA provided notification of this to pilots which is another point so with all that in mind again and finally this this is not these trees were not hazardous there were two safe ways in and out of the airport the police haven't disputed that they've talked about the 1965 report that was basically issued by a pilot who went to the airstrip and looked at it and what the set of trees the cottonwood trees they need to come out because they're dangerous so the Forest Service took them out and then he said well here's some other trees the conifers and even by contrast he did not recommend that those trees come out what he said was okay well those trees can stay but if in the future that we receive any reports that they're problematic well then let's think about it and then we can think about it at that point well getting back to discretionary function the fact that some pilot looked at some trees and said well in the future we might want to consider whether to take them out that's not a specific mandatory duty by by far means and then so plaintiff mentions that in 1995 there was a crash at this site but the record shows it's undisputed there was a Forest Service volunteer who who saw who was who was aware of where that 1995 crash occurred and he was also aware of where this occurred and he said there are different set of trees the 1995 crash occurred on a straight-out approach from the runway which is one incidentally the pilot short himself usually use safely on numerous occasions these trees are set off to the right of the of the airstrip so it's completely different set of trees that couldn't have put the Forest Service on notice of anything the NTSB never said that these trees constituted a hazard what certainly you have trees it's a backcountry airport that part of the appeal to pilots is that they get to challenge their skills flying and out of these airports there are trees there that doesn't mean they're a hazard it's just natural to the area with that I see my time is about expired and now is so if the court has no questions we would rest on the briefs all right thank you very much counsel I think you had just a short brief time to sum up just a couple of quick points first under the Forest Service manual the council did not identify it correctly what was adopted under 7735.211 it's the all the applicable federal aviation FAA regulations and in particular 77.15 of the regulations says objects that are considered obstructions under the standards are presumed hazards to aviation air navigation unless further study shows otherwise more importantly the only study we know of that was just prior to the crash was the one council just talked about and the court can look at supplemental record 127 last line where their own inspection says there are numerous additional obstructions at both ends of the of the runways in 2011 they identified them last point I'd like to make before I finish the Morales case which council identify points out as being supportive is not Morales was very clear if wires were over 200 you had to mark them there was no discretion that was a crash under 200 feet and under the regulations you had discretion to mark under 200 and and very big difference here this is a situation where they adopted a FAA requirement and hazard and they chose the Forest Service chose to add a requirement that they must follow once you meet FAA standards and we agree the FAA standards don't say shut or cut this is a Forest Service addition that they added to their to thank you all right short versus u.s. is submitted and this session of the court is adjourned for today this court for this session stands adjourned
judges: Wardlaw, Bea, Rosenthal